UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROUSES ENTERPRISES, LLC § | |
| § | CIVIL ACTION NO. 20-2378 |
| VERSUS § | |
| § | DISTRICT JUDGE WENDY VITTER |
| JAMES B. CLAPP, II § | |
| § | MAGISTRATE JUDGE KAREN ROBY |
| § | |

## ROUSES ENTERPRISES, LLC'S SUGGESTED
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Pursuant to the Court's Pre-Trial Notice (Doc. 9-1), Plaintiff Rouses Enterprises, LLC ("Plaintiff" or "Rouses") hereby submits the following suggested findings of fact and conclusions of law:

I. **FINDINGS OF FACT**

   a. **Defendant's Employment with Rouses.**

   1. Rouses is one of the largest independent grocers in the United States, serving customers in Louisiana, Mississippi, and Alabama.

   2. Defendant James B. Clapp, II ("Defendant" or "Clapp") applied for Rouses' open position of Vice President of Center Store Merchandising through a recruiter, Jean Forney, of Samuel J. Associates.

   3. Specifically, Ms. Forney submitted Defendant's resume to Rouses on December 13, 2017.

   4. On the morning of December 27, 2017, Defendant interviewed with Rouses' President and Chief Operating Officer, Steve Black, via telephone for the position of Vice President of Center Store Merchandising.

5. That afternoon after Defendant's interview, Rouses presented Defendant with an "Agreement not to Compete Against or Disclose Information of Rouses Enterprises, L.L.C." (the "Agreement").

6. Since 2016, Rouses typically provides applicants for senior-level executive positions with a noncompete agreement in some format before the applicants become employed by Rouses.

7. On December 28, 2017, Defendant signed the Agreement.

8. The Agreement provides, in relevant part, as follows:

> I, James B. Clapp II, as employee and in consideration for my employment or continued employment, as appropriate, and other good and valuable consideration as provided in this document, enter this date into the following agreement with my employer, Rouses Enterprises, L.L.C.
> …
> During my employment, and for 24 months (two years) following the termination of my employment (for any reason) with Rouses, I will not compete with Rouses, including, but not limited to, the following:
>
> (a) I will not work in Louisiana parishes, Mississippi and/or Alabama Counties listed in Exhibit A in any capacity for any business engaged in the retail grocery business.
>
> …
> I acknowledge and agree that a breach of the covenants contained in this document will cause irreparable harm to Rouses and will cause undue hardship to which the remedy at law for damages will be inadequate. Therefore, in the event of a breach or anticipatory breach of the agreements, I agree that Rouses shall be entitled to seek the following particular forms of relief, in addition to remedies otherwise available to it at law or equity: (1) injunctive relief; and (2) damages for the loss sustained and the profit of which Rouses will be deprived, as well as reasonable attorney's fees and costs incurred by Rouses to enforce the agreements.

9. The parishes and counties listed in Exhibit A of the Agreement are all locations where Rouses does business.

10. Defendant admits that the Agreement he signed is a non-compete agreement.

11. Defendant is sure he read the Agreement that he signed.

12. Defendant never expressed any concerns about the Agreement to anyone at Rouses or discussed the Agreement with anyone at Rouses.

13. Defendant admits that the Agreement bars him from working in any of the listed parishes for two years after leaving employment with Rouses.

14. Defendant participated in a phone interview with Rouses' Chief Executive Officer, Donny Rouse, on January 10, 2018.

15. Defendant traveled to Louisiana from Michigan to meet with Rouses representatives in person on January 18-20, 2018; these were the first dates that Defendant had available to travel to Louisiana.

16. On January 23, 2018, Rouses offered Defendant the position of Vice President of Center Store Merchandising, which he accepted on January 24, 2018.

17. Defendant's consent to and signature on the Agreement was a condition precedent to his employment; had Defendant not agreed to the Agreement, he would not have been offered the position with Rouses.

18. Defendant originally proposed a start date with Rouses of February 5, 2018, as he was still employed by his former employer at the time he accepted Rouses' job offer.

19. However, Defendant later requested that his start date be delayed until February 12, 2018.

20. In his position as Vice President of Center Store Merchandising, Defendant had responsibility for the sale of merchandise in all of Rouses' stores in all of the states in which Rouses operates, including Louisiana, Mississippi, and Alabama.

21. Defendant submitted a resignation letter to Rouses on January 17, 2020, noting that his last day of employment would be January 31, 2020.

### b. Defendant's Competition with Rouses.

22. Clapp began working for Brookshire Grocery Company ("Brookshire") on March 14, 2020.

23. Brookshire operates stores in Texas, Arkansas, and Louisiana.

24. Brookshire is a direct competitor of Rouses.

25. Brookshire competes with anyone that sells food.

26. According to Clapp, Brookshire had become very competitive with Rouses in New Iberia and Lafayette, Louisiana, where Brookshire operates stores under its Super 1 Foods banner.

27. Brookshire operates approximately ten Super 1 Foods in the New Iberia/Lafayette market, and Rouses operates approximately four stores in that area.

#### i. Defendant's position with Brookshire requires competing with Rouses.

28. Clapp's position with Brookshire is Category Manager for snacks and multicultural items.

29. While Clapp is located in Tyler, Texas, his work activities on behalf of Brookshire are for all of Brookshire's stores, including its stores in Louisiana.

30. In fact, Clapp is judged on his performance by Brookshire not just with respect to the financial success of Brookshire's stores in Texas, but also the financial success of its stores in Louisiana.

31. There are no Brookshire Category Managers responsible for stores in just one state; rather, they are all responsible for Brookshire's stores in all states in which Brookshire operates.

32. All of Clapp's duties as a Category Manager are designed to ensure that Brookshire is competitive in the grocery industry.

33. As a Category Manager for Brookshire, Clapp is responsible for generating ad plans and selecting items for inclusion in the weekly circular that Brookshire circulates in the communities in which it operates stores, including in Louisiana.

34. Additionally, for all of Brookshire's stores, including its stores in Louisiana, Clapp decides what items in his category will be displayed and the price at which the items will be sold.

35. Similarly, Clapp is responsible for evaluating schematics and spacing of product locations in stores and determining the need for adjustments to product displays in all of Brookshire's stores, including its stores in Louisiana.

36. Furthermore, Clapp works with vendor partners and suppliers to negotiate pricing of goods for all of Brookshire's stores, including its stores in Louisiana.

37. Clapp is also responsible for developing a category business plan for his category for all of Brookshire's stores, including its stores in Louisiana.

38. Clapp participates in meetings with Brookshire's other Category Managers in which they discuss their plans in relation to all of Brookshire's stores, including its stores in Louisiana.

39. In sum, Clapp is responsible for trying to increase market share, revenue, and profit within his category for Brookshire by competing with other grocery stores for the consumers' food dollar.

    **ii. Defendant admits competing with Rouses.**

40. In his role as a Category Manager for Brookshire, Clapp is responsible for visiting competitive market locations.

41. The purpose of going into a competitor's store is to assess the conditions and merchandising in the store, to see what products are being offered, and to see what the prices for those products are.

42. Clapp and other Brookshire employees acknowledge that visiting stores of competitors is a competitive activity.

43. On March 18, 2020, while employed by Brookshire, Clapp and three other Brookshire employees took a private plane to Louisiana to visit stores.

44. While Clapp and the other Brookshire employees were in Louisiana, they visited Rouses' store in New Iberia.

45. Clapp walked the Rouses' store in New Iberia for 10 to 15 minutes.

46. Clapp and his supervisor, Michelle Boone, admit that walking the Rouses' store in New Iberia on March 18, 2020 was a competitive activity.

### iii. Clapp worked in Louisiana while employed by Brookshire.

47. Clapp worked for Brookshire from his home in Houma, Louisiana during the month of June 2020.

48. Specifically, Clapp had an office set up in his home in Louisiana where he could do his work for Brookshire.

49. Clapp admits that he was performing the same job duties for Brookshire that he has always been responsible for as a Category Manager while he worked from his home in Houma, Louisiana in June 2020.

## II. CONCLUSIONS OF LAW

1. Restrictive covenants in Louisiana are governed by Louisiana Revised Statute § 23:921.

2. Pursuant to this statute, "[a]ny person…who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the

employer carries on a like business therein, not to exceed a period of two years from termination of employment." La. R.S. § 23:921(C).

3. The statute also provides that any agreement thereunder "shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived." La. R.S. § 23:921(H).

4. Additionally, "upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement." Id.

5. Contrary to Defendant's argument, that the non-compete agreement must be signed by a person at the time he is employed is *not* one of the requirements of the statute, like the two-year limit, or listing of specific parishes, or explanation of the type of business operated by the employer. Instead, "employee" and "employer" are merely *descriptors* of the persons (and company) that enter into such agreements. Thus, Defendant's argument that a person must be actually employed at the time that he signs the agreement is misplaced, *as there is actually no such provision found anywhere in the statute (or in any case law interpreting the statute)*. The statute says that such an agreement is entered into by an "employer" and an "employee," and this is necessarily so. Critically, the statute does not say *when* such an agreement must be signed. The legislature could have added such a requirement but did not do so. No amount of strained reasoning can provide this condition if the legislature did not do so. Likewise, *even a strict construction of the statute cannot read in a provision that simply does not exist*.

6. Similarly, Defendant has referred in numerous filings to the purported "employer/employee relationship exception" allegedly contained within the statute. However, Defendant's reliance on this purported "exception" is misplaced, as it does not exist *anywhere*

within the statute. Rather, this exception is merely something Defendant has created. Other than argument of counsel, Defendant does not have any support for his position that the statute contains such an exception.

### a. The Agreement is Enforceable.

7. To prevail in this action, Rouses must show that the Agreement is enforceable and that Defendant breached the Agreement. *See* Brock Servs., L.L.C. v. Rogillio, 936 F.3d 290, 296 (5th Cir. 2019).

8. Because Defendant agreed with Rouses not to compete within specific parishes for a period of two years following his employment, and because Defendant has competed with Rouses in the specified parishes, Rouses is entitled to damages pursuant to the terms of the Agreement and injunctive relief enforcing the Agreement.

9. The two-year period of the Agreement is enforceable under Louisiana law. *See* Envtl. Safety & Health Consulting Servs., Inc. v. Fowler, 2019-0813, 2020 WL 1173587, at *6 (La. App. 4 Cir. 3/11/20), writ denied, 2020-00729 (La. 10/6/20), 302 So. 3d 528; Newton & Assocs., Inc. v. Boss, 00-889 (La. App. 5 Cir. 10/18/00), 772 So. 2d 793, 795–96, writ denied, 2000-3162 (La. 1/12/01), 781 So. 2d 559; Dixie Parking Serv., Inc. v. Hargrove, 96-1929 (La. App. 4 Cir. 3/26/97), 691 So. 2d 1316, 1320.

10. The geographic limitations in the Agreement are enforceable, as they are limited to specifically identified Louisiana parishes and Alabama/Mississippi counties where Rouses does business. *See* Envtl. Safety, 2020 WL 1173587, at *6; Causin, L.L.C. v. Pace Safety Consultants, LLC, 2018-0706, 2019 WL 385206, at *7 (La. App. 4 Cir. 1/30/19), writ denied, 2019-0466 (La. 5/20/19), 271 So. 3d 203.

11. The Agreement clearly states that it was signed *in consideration of* Defendant's employment with Rouses.

12. Moreover, Rouses has proven that that Defendant's consent to and signature on the Agreement was a condition precedent to his employment; had Defendant not agreed to the Agreement, he would not have been offered the position with Rouses.

13. Defendant has not identified any case law supporting his argument that the Agreement is invalid simply because he signed it before he actually began employment with Rouses.

14. Non-compete agreements are routinely entered into by applicants as part of the employment application process, and Louisiana courts (and courts all over the country, as cited *infra*) have consistently enforced non-compete agreements entered into in consideration of or as a condition of employment.

15. For example, in case of Henderson Implement Co. v. Langley, 97-1197 (La. App. 3 Cir. 2/4/98), 707 So. 2d 482, Langley argued that the non-compete agreement he entered into with his former employer, Henderson Implement Co., was null and void for failing to comply with La. R.S. 23:921(C).

16. There, like the Agreement at issue, the agreement explicitly stated that it was "in consideration of the at-will employment" of Langley by Henderson. Id. at 483.

17. Langley argued that the agreement was invalid because he was preparing to work for Henderson when the agreement was presented to him.

18. The court rejected Langley's argument and affirmed the trial court's judgment enforcing the agreement, reasoning as follows:

> *Langley also argues there was no cause for the contract since he had terminated his previous job and prepared to begin work with Henderson when the non-competition agreement was presented to him.* He also argues lack of mutuality because the only benefit was to Henderson. ***Langley's arguments in***

9

> *these respects are unsupported by the record and are, at the very least, tenuous. The record reflects evidence that the non-competition agreement was discussed with Langley prior to employment*, and Langley read the contract and felt he understood what he read.

Id. at 486 (emphasis added).

19. Thus, the court enforced the agreement that was presented to Langley "in consideration" of his employment with Henderson prior to his employment actually beginning.

20. Here, too, the Agreement was presented to Defendant in consideration of his employment with Rouses prior to his employment and is likewise enforceable.

21. Similarly, in Causin, L.L.C. v. Pace Safety Consultants, LLC, 2018-0706 (La. App. 4 Cir. 1/30/19), writ denied, 2019-0466 (La. 5/20/19), 271 So. 3d 203, the court analyzed a non-compete agreement challenged by Baker that was entered into "[a]s a condition of [Baker's] employment with Causin."

22. There, the court explicitly noted that Baker was employed "after" signing the agreement at issue and that Baker was presented with the non-compete document "as a condition of his employment." Id. at *4-5.

23. Ultimately, the court held that "Baker agreed to and accepted the nonsolicitation and noncompetition restrictions contained in the Non-Compete Document as a condition of his employment" and affirmed the trial court's judgment in favor of Causin. Id. at *8.

24. Here, just like Baker, Defendant entered into the Agreement with Rouses as a condition of his employment with Rouses.

25. Specifically, Defendant's consent to and signature on the Agreement was a condition precedent to his employment; had Defendant not agreed to the Agreement, he would not have been offered the position with Rouses.

26. Thus, Defendant's Agreement is likewise enforceable under Louisiana law.

27. Notably, *courts across the country have enforced non-compete agreements entered into before an individual's employment actually began*—even in states where, like Louisiana, restrictive covenants are not favored and are strictly construed. *See, e.g.,* Universal Engraving, Inc. v. Duarte, 519 F. Supp. 2d 1140, 1145 (D. Kan. 2007) (enforcing non-compete agreement entered into by defendant "[b]efore starting work"); Patio Enclosures, Inc. v. Four Seasons Mktg. Corp., 2005-Ohio-4933, ¶ 21 (affirming jury verdict in favor of plaintiff against defendant on tortious interference with contract claim based on defendant's interference with non-compete agreement which employee signed "a couple of weeks before he was hired" by plaintiff); WellSpan Health v. Bayliss, 2005 PA Super 76, ¶ 43, 869 A.2d 990, 1003 (2005) (enforcing restrictive covenant against doctor where agreement was entered "shortly before starting work," even though "Pennsylvania courts have historically been reluctant to enforce contracts that place restraints on trade or on the ability of an individual to earn a living"); IKON Off. Sols., Inc. v. Am. Off. Prod., Inc., 178 F. Supp. 2d 1154, 1159–61 (D. Or. 2001), aff'd, 61 F. App'x 378 (9th Cir. 2003) (enforcing non-compete dated seven days before employee began working); Basicomputer Corp. v. Scott, 973 F.2d 507, 511 (6th Cir. 1992) (affirming enforcement of non-compete agreements signed by employees "as a condition of employment before they began working").

28. In fact, some states even *require* a restrictive covenant be entered into before employment begins. *See, e.g.,* IKON Off. Sols., Inc. v. Am. Off. Prod., Inc., 178 F. Supp. 2d 1154, 1159–61 (D. Or. 2001), aff'd, 61 F. App'x 378 (9th Cir. 2003):

> Defendant Bergey argues that her non-competition agreement is void because she began working for IKON on December 1, 1989, but did not sign a non-competition agreement until December 18, 1989. I agree. The term "initial employment" in ORS 653.295 "means when the employee starts work." *Olsten Corp. v. Sommers,* 534 F.Supp. 395, 398 (D.Or.1982). *Cf. Perthou v. Stewart,* 243 F.Supp. 655, 659 (D.Or.1965) (agreement void where employment commenced

on June 1 but the non-competition agreement was not signed until June 7); *Pacific Veterinary Hospital, PC v. White,* 72 Or.App. 533, 696 P.2d 570 (1985) (agreement signed after employment commenced was void).

The parties have cited no published Oregon case enforcing a non-competition agreement signed more than three days after the employee commenced work or was promoted. *See Bouska v. Wright,* 49 Or.App. 763, 621 P.2d 69 (1980). If 17 days after is timely, as Ikon contends, then why not 20 or 30 or even 60 days? I decline Ikon's invitation to embark on that path, particularly when the Oregon Legislature has declared that a noncompetition agreement is void unless it complies with the statutory requirements. Under Oregon law, the right not to be subjected to a non-competition agreement, except as authorized by ORS 653.295, is an "important employment-related statutory right." *Dymock v. Norwest Safety Protective Equip. for Oregon Industry, Inc.,* 172 Or.App. 399, 405–06, 19 P.3d 934 (2001).

Ikon attempts to create a material factual dispute by speculating that Bergey may not have commenced working for Ikon until December 18, but Ikon offers no evidence to support that theory, and Ikon's designated corporate representative, Ronald McGee, recently conceded at deposition that Ikon has no such evidence.[6] I hold that Bergey's non-competition agreement is void as a matter of law.

I reach the opposite conclusion with regard to Bradley. His non-competition agreement is dated December 4, 1989, and he did not begin working for Ikon until December 11, 1989.

29. *See also* Fifield v. Premier Dealer Servs., Inc., 2013 IL App (1st) 120327, ¶ 18, 993 N.E.2d 938, 943 (rejecting defendant's argument that non-compete entered into before employment began was not a post-employment restrictive covenant: "We also disagree with Premier's argument that the nonsolicitation and noncompetition provisions in the agreement were not postemployment restrictive covenants because Fifield signed the agreement before he was employed by Premier. Premier cites no authority for its novel definition of postemployment restrictive covenants."); Prime Vest Fin. Servs., Inc. v. Ruxer, No. CIV 05-1312PAMRLE, 2005 WL 1959505, at *1 (D. Minn. Aug. 15, 2005) ("Non-competition agreements signed before the inception of employment do not require independent consideration to be valid and enforceable, whereas non-competition agreements signed after employment begins are generally

unenforceable unless they are ancillary to employment or otherwise supported by independent consideration.").

30. Furthermore, a "noncompetition agreement is a contract between the parties who enter it, and it is to be construed according to the general rules of contract interpretation." Brock Servs., L.L.C. v. Rogillio, 936 F.3d 290, 298 (5th Cir. 2019) (quoting Reg'l Urology, L.L.C. v. Price, 966 So.2d 1087, 1091 (La. Ct. App. 2007)).

31. As the court explained in Pattridge v. Starks, 50,135 (La. App. 2 Cir. 11/18/15), 181 So. 3d 192, 197, writ denied sub nom. Pattirdge v. Starks, 2015-2325 (La. 2/19/16), 187 So. 3d 463:

> A non-competition agreement is a contract between the parties and should be construed according to the general rules of interpretation of contracts. La. C.C. arts.2045–2057; *SWAT 24 Shreveport Bossier, Inc. v. Bond,* 2000–1695 (La.06/29/01), 808 So.2d 294. A contract establishes the law between the parties, and the purpose of contract interpretation is to determine the common intent of the parties. La. C.C. art.2045. Ordinarily, the meaning and intent of the parties to a written instrument should be determined within the four corners of the document and its terms should not be explained or contradicted by extrinsic evidence. *RJAM, Inc. v. Miletello,* 45,176 (La.App.2d Cir.04/14/10), 44 So.3d 283, *writ denied,* 2010–1127 (La.09/17/10), 45 So.3d 1049. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art.2046. A clear and unambiguous clause in a contract should not be disregarded so as to pursue its spirit; it is not the court's duty to "bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties." *Clovelly Oil Co. v. Midstates Petroleum Co.,* 2012–2055 (La.03/19/13), 112 So.3d 187 at 192. Courts must interpret contracts in a "common-sense fashion," giving the words of the contract their "common and usual significance." *Id.* Each provision must be interpreted in light of the other provisions of the contract so that each is given the meaning suggested by the contract as a whole. La. C.C. art.2050.

*See also* Commc'n & Tech. Indus., Inc. v. Glob. Hunter Sec., Inc., 12-861 (La. App. 5 Cir. 5/16/13), 116 So. 3d 917, 921:

> A non-solicitation agreement, like a noncompetition agreement, is a contract between the parties who enter it, and it is to be construed according to the general rules of contract interpretation. *See generally, Sanchez* at 5; 82 So.3d at 528. The common intent of the parties is used to interpret a contract. *Id., citing,* La. C.C. art.2045. When the words of a contract are clear and explicit and lead to no

absurd consequences, no further interpretation may be made in search of the parties' intent. *Id., citing,* La. C.C. art.2046.

32. Here, the terms of the parties' Agreement are unambiguous—*i.e.* "in consideration for [his] employment," Defendant agreed to be restricted from competing with Rouses under certain circumstances.

33. Thus, basic principles of contract interpretation contradict Defendant's argument and warrant enforcing the Agreement in Rouses' favor.

34. Opposing counsel suggested at the pretrial conference in this matter that Louisiana courts rarely enforce restrictive covenants. This simply is not true, as a cursory review of case law illustrates. *See, e.g.,* Restored Surfaces, Inc. v. Sanchez, No. 694179, 2012 WL 683924 (La. Dist. Ct. Feb. 10, 2012) (enforcing non-compete agreement in favor of the plaintiff who was represented by Jude Bursavich, who also represents Defendant in this matter). *See also* Neill Corp. v. Shutt, 2020-0269 (La. App. 1 Cir. 1/25/21); Savard Lab. & Marine, Inc. v. GLO Res., LLC, 2020-0192 (La. App. 1 Cir. 11/6/20), reh'g denied (Dec. 21, 2020); Smith v. Commercial Flooring Gulf Coast, L.L.C., No. 18-0068, 2019 WL 8222515, at *1 (La. Dist. Ct. Feb. 11, 2019); Billedeaux Hearing Center, LLC. v. Urban-Kingston, No. 2015-0726, 2015 WL 13816242, at *1 (La. Dist. Ct. Apr. 06, 2015); Acadian Cypress & Hardwoods, Inc. v. Stewart, No. 0120001413, 2012 WL 8465729, at *1 (La. Dist. Ct. Aug. 23, 2012); Weatherall Radiation Oncology v. Caletri, No. 138488, 2011 WL 9196272 (La. Dist. Ct. Mar. 14, 2011); Moores Pump & Supply, Inc. v. Laneaux, 98-1049 (La. App. 3 Cir. 2/3/99), 727 So. 2d 695, 698; Cellular One, Inc. v. Boyd, 94-1783 (La. App. 1 Cir. 3/3/95), 653 So. 2d 30, 33, writ denied, 95-1367 (La. 9/15/95), 660 So. 2d 449.

### b. Defendant Breached the Agreement.

35. Clapp breached the Agreement with Rouses by his employment with Brookshire, a direct competitor of Rouses.

36. Specifically, Clapp has admitted that he competed with Rouses in three ways.

37. First, Clapp has admitted that the duties of his job as Category Manager for Brookshire require him to perform numerous activities to ensure the success of Brookshire's stores in Louisiana, and that he is judged on his performance by Brookshire based upon the financial success of its stores in Louisiana.

38. Clapp's manager also admitted that all of Clapp's duties as a Category Manager are designed to ensure that Brookshire is competitive in the grocery industry.

39. Second, Clapp has admitted that he walked Rouses' store in New Iberia while employed by Brookshire and admitted that this was a competitive activity (as did numerous other Brookshire employees).

40. Third, Clapp and his manager have admitted that Clapp worked from his home in Houma, Louisiana for the month of June 2020 performing his duties as Category Manager for Brookshire.

41. Thus, Defendant breached his non-compete obligations under the Agreement with Rouses. *See* Brock Servs., L.L.C. v. Rogillio, 936 F.3d 290, 300 (5th Cir. 2019) (upholding issuance of injunction in favor of defendant's former employer); Delta Fuel Co. v. Loyed, 2016-717 (La. App. 3 Cir. 4/19/17), 218 So. 3d 184, 189 (affirming trial court's conclusion that former employee violated his employment agreement by becoming employed with a direct competitor of his former employer).

### c. **Rouses is Entitled to Injunctive Relief, Attorneys' Fees, and Costs.**

42. Because Rouses has proven that Defendant breached the Agreement, Rouses is entitled to injunctive relief prohibiting Defendant from competing with Rouses for a period of two years pursuant to the plain language of the Agreement and Louisiana's governing statute. *See* La. R.S. § 23:921(H) ("[U]pon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court ... ***shall*** order injunctive relief enforcing the terms of the agreement.") (emphasis added). *See also* Brock Servs., L.L.C. v. Rogillio, 936 F.3d 290, 299 (5th Cir. 2019); Ethan & Assocs., Inc. v. McKay, No. 2005 CA 2567, 2006 WL 3544807, at *5 (La. Ct. App. Dec. 6, 2006) ("Pursuant to [§ 23:921(H)], upon such proof of ... failure to perform in accordance with their respective employment agreements, [the employer] was entitled to injunctive relief enforcing the entirety of the employment agreements without establishing that McKay and Mosely had breached each individual obligation of the employment agreement.").

43. Additionally, Rouses is entitled to recover attorneys' fees and costs incurred to enforce the Agreement, as the Agreement specifically provides for such relief. *See* Family Care Servs., Inc. v. Owens, 45,505 (La. App. 2 Cir. 8/11/10), 46 So. 3d 234, 244 ("We conclude that, limited to the facts of this case, FCS obtained a judgment in its favor in the form of a preliminary injunction, was the prevailing party, and thus was entitled to attorney fees under the terms of the contract.").

44. The amount of attorneys' fees and costs to which Rouses is entitled will be determined by the Court on post-judgment briefing, as Rouses is continuing to incur attorneys' fees through the trial in this matter. *See* Malin Int'l Ship Repair & Drydock, Inc. v. M/V SEIM SWORDFISH, 611 F. Supp. 2d 627, 638 (E.D. La. 2009), aff'd sub nom. Malin Int'l Ship Repair & Drydock, Inc. v. Veolia Es Special Servs., Inc., 369 F. App'x 553 (5th Cir. 2010); *see also* Compania Sud

Americana de Vapores S.A. v. Glob. Terminal & Container Servs., LLC, No. 09 CIV. 7890 PAC, 2013 WL 5754391, at *2 (S.D.N.Y. Oct. 23, 2013) (relying on Malin and holding on summary judgment that plaintiff was entitled to attorney's fees on its breach of contract claim and leaving question as to the amount of fees to post-judgment briefing).

Respectfully submitted,

*/s/ Charles H. Hollis*

CHARLES H. HOLLIS (#06961)
ALLISON A. FISH (#36456)
The Kullman Firm
A Professional Law Corporation
1100 Poydras Street, Suite 1600
New Orleans, LA 70163
Telephone (504) 524-4162
Facsimile: (504) 596-4114
chh@kullmanlaw.com
aaf@kullmanlaw.com

**COUNSEL FOR PLAINTIFF
ROUSES ENTERPRISES, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of April, 2021, I filed the foregoing using the CM/ECF system, which will provide electronic notice of such filing to all counsel of record.

*/s/ Charles H. Hollis*

Charles H. Hollis